UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID HUTCHINS and
MILWAUKEE DEPUTY SHERIFFS' ASSOCIATION,

   Plaintiffs,

  v.                Case No. 07-C-0526

DAVID A. CLARKE, JR. and
MILWAUKEE COUNTY,

   Defendants.

---

**DECISION AND ORDER ON PLAINTIFFS' MOTION
FOR REIMBURSEMENT OF ATTORNEY'S FEES AND COSTS
PURSUANT TO 42 U.S.C. § 1988**

---

  To paraphrase Paul McCartney, this case has followed a "long and winding road" to reach this point. But finally, all the issues that the case presented have been resolved, save one: attorney's fees. And in the end there is really only one issue about which the parties argue with respect to attorney's fees: whether plaintiffs' counsel should be awarded attorney's fees computed at an hourly rate that plaintiffs' first and second counsel agreed to be paid by plaintiff Milwaukee Deputy Sheriffs' Association ("DSA") or, in the alternative, whether the award of attorney's fees should be computed at a higher hourly rate, i.e., that which the plaintiffsco claim to be the "market rate." What is not at issue is the amount of time spent by plaintiffs' counsel prosecuting the case.

  The relevant facts are these. The plaintiffs were originally represented by the law firm of Cermele & Associates, S.C. ("C&A"). According to Jonathan Cermele, he represented the plaintiffs in all respects from the commencement of this litigation through this court's January 16, 2009 Decision and Order granting summary judgment to plaintiffs and until February 5, 2009, at which time the plaintiffs' representation was transferred to the law firm of Vanden Heuvel and Dineen, S.C. (Cermele Aff. ¶ 3.) Attorney Cermele further avers in his affidavit:

> 5. Per my firms's agreement with the Milwaukee Deputy Sheriff's Association ("DSA"), and because of what had been the long standing relationship between C&A and the DSA, C&A billed the DSA at the reduced hourly rate of $150.00/hour for shareholders, and $125.00/hour for associates.
>
> 6. Per that same agreement, if successful in a fee-shifting suit such as this litigation, C&A would submit the fees at the prevailing "market rate" for litigation such as this ($250/hour for Cermele, $200/hour for Pings, and $175/hour for Granitz, as previously determined by the Hon. Lynn Adelman in *Zidek, et al. v. Clarke*, 06-CV-602, Exhibit A, at 7-8), and the DSA would then be reimbursed what it paid, with the balance going to C&A to compensate C&A for the prevailing "market rate" . . . .

(Cermele Aff. ¶¶ 5-6.) Subsequently, Vanden Heuvel & Dineen, S.C. ("V&D") entered into the same arrangement with the Milwaukee Deputy Sheriff's Association. (Plts.' Reply Br. at 2.)

The defendants argue that the court should not award attorney's fees based on the prevailing market hourly rate for similar legal services. Instead, the court should award attorney's fees based on the hourly rate at which DSA agreed to pay counsel. According to the defendants, "doing work for the Deputy Sheriff's Association was a substantial portion of the work of Cermele and Associates. This is not a case where the law firm only gets paid if it prevails. . . . [T]he regular rate charged to a substantial and significant client should be the 'market rate' for fee shifting purposes." (Defs.' Br. at 2.)

The prevailing party in a civil rights case such as this is entitled to reasonable attorney's fees and costs, pursuant to 41 U.S.C. § 1988. When determining attorney's fees, courts apply the "lodestar" method, which multiplies the reasonable hourly rate by the reasonable number of hours expended. *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). Once the lodestar is determined, a court may then determine whether that fee is to be adjusted, either upward or downward. *People Who Care,* 90 F.3d at 1310. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court set forth twelve factors the court should consider in deciding whether the lodestar should be adjusted. Those factors are:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal services properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee in the community;
> (6) whether the fee is fixed or contingent;
> (7) time limitation imposed by the client or circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorney;
> (10) the undesirability of the case;
> (11) the nature and length of the professional relationship with the client; and,
> (12) awards in similar cases.

*Hensley,* 461 U.S. at 430, fn. 3.

According to Attorney Jonathan Cermele, the lodestar amount for C&A is $40,447.50. This amount is arrived at by multiplying the number of hours expended by Attorney Cermele by the hourly rate of $250.00; by multiplying the number of hours expended by Attorney Rachel Ping by the hourly rate of $200.00; and by multiplying the number of hours expended by Attorney Matthew Granitz by the hourly rate of $175.00.

According to Attorney Linda Vanden Heuvel, the lodestar amount for V&D is $10,617.16. This amount is arrived at by multiplying the number of hours expended by Attorney Vanden Heuvel by the hourly rate of $250.00; and by multiplying the number of hours expended by Attorney Graham P. Wiemer by the hourly rate of $200.00.

Thus, according to the plaintiffs, the attorney's fees lodestar total is $51,064.66.

As previously stated, the defendants do not take issue with the amount of time plaintiffs' counsel claim to have expended on the case. Nor do they seem to dispute plaintiffs' counsel's entitlement to attorney's fees. Rather, the defendants argue that the lodestar amount should be determined by multiplying the amount of time expended by counsel by the hourly rates at which each counsel agreed to be compensated by the DSA for their services. In the case of Attorneys Cermele

3

and Vanden Heuvel, this would be an hourly rate of $150.00 and in the case of Attorneys Ping, Granitz and Wiemer, this would be an hourly rate of $125.00.

The defendants have not computed what the total lodestar amount would be under their alternative calculation scenario, but suffice it to say that it would be considerably less than the lodestar proposed by the plaintiffs.

In determining "reasonable hourly rates," the Supreme Court has repeatedly stressed that "attorney's fees awarded under [Section 1988] are to be based on market rates for services rendered." *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). The attorney's actual billing rate for comparable work is "presumptively appropriate" to use as the market rate. *People Who Care*, 90 F.3d at 1310 (quoting *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)).

> If the court is unable to determine the attorney's true billing rate, however (because he maintains a contingent fee or public interest practice, for example), then the court should look to the next best evidence — that rate charged by lawyers in the community of "reasonably comparable skill, experience, and reputation." Once the court reaches an amount using the lodestar determination, it may then adjust that award in light of factors adopted by Congress in enacting Section 1988, known as the *Hensley* factors, although most of those factors are usually subsumed within the initial lodestar calculation.

*People Who Care*, 90 F.3d at 1310-11 (citations omitted.) Furthermore, as the court in *People Who Care* stated, "atypical billing arrangements with certain clients should enter a court's calculation in a manner that is consistent with the attorney's overall practice. . . . [A]ttorneys often provide services to some of their clients on terms that decrease their 'true' billing rate[.] . . . However, reduced-rate hours should be considered only in proportion to the percentage of the attorney's practice they represent." *Id.* at 1312-13.

Properly applying the above principles to the circumstances of this case is not as clear as it might first seem to be. Attorney Cermele avers that "[p]er [his] firm's agreement with the Milwaukee Deputy Sheriff's Association ('DSA'), and because of what had been the long standing relationship

4

Case 2:07-cv-00526-WEC   Filed 06/14/10   Page 4 of 10   Document 92

between C&A and the DSA, C&A billed the DSA at the reduced hourly rate of $150.00/hour for shareholders, and $125.00/hour for associates." (Cermele Aff. ¶ 5.) He does not state, however, what percentage of his firm's work is performed for the DSA.

To be sure, he does state the following: "I have regularly charged and receive[d] $250.00 per hour for work performed by myself and Attorney Pings when representing law enforcement officers in constitutional litigation." (Cermele Aff. ¶ 8, section E.) But Attorney Cermele's affidavit does not include any representations about the following: (1) whether C&A represents law enforcement officers in civil litigation as plaintiff's or defendant's counsel; (2) whether the law enforcement officers themselves pay that amount or whether it is paid by municipalities, insurance companies or other entities; and (3) what percentage of Attorney Cermele's practice consists of work commanding his $250.00 hourly rate.

He also avers as follows:

This firm's special relationship with law enforcement officers was instrumental in representing the plaintiffs in this case. C&A represents the Milwaukee Police Association (approximately 1,600 non-supervisory law enforcement officers), the Wauwatosa Peace Officers Association (approximately 60 non-supervisory law enforcement officers), and the Brown County Non-Supervisory Labor Association (approximately 140 non-supervisor law enforcement officers). In addition, C&A represented the Milwaukee Deputy Sheriff's Association (approximately 450 law enforcement officers) from 2003 until January 2009.

(Cermele Aff. ¶ 8, section I.)

Such averment certainly suggests that representing law enforcement associations constitutes a substantial part of the work performed by C&A. If that is the case, and if the rate that C&A actually charges such associations is $150.00 (for partner work) and $125.00 (for associate work), then such amounts would seem to be the "presumptively appropriate" amounts to use as the market rates in this case. *See People Who Care*, 90 F.3d at 1310. Unfortunately, the court has no way of knowing for certain what percentage of C&A's work is comprised of work done for law enforcement associations.

5

All the court knows is that in this case C&A agreed to be paid by DSA at the rate of $150.00 and $125.00 per hour in return for representing the interests of plaintiffs Hutchins and DSA.

Such being the case, I am constrained to use the hourly rates actually used to bill DSA in calculating the lodestar amount for work performed by C&A. However, this does not end the analysis. I must also take a look at the *Hensley* factors and determine whether the lodestar amount should be adjusted before settling upon the amount of attorney's fees that should properly be awarded to C&A.

Attorney Cermele avers, and I agree, that the questions presented in this case were novel, difficult, and perhaps most importantly, significant. The issues involved whether an elected government official violated a municipal employee's rights under the First Amendment, as well as Wisconsin's Open Records Law and Right to Privacy Law. The issues in the case impacted not only the named individual plaintiff, but hundreds of other DSA members.

There is no question that Attorney Cermele has considerable experience in litigating civil rights cases for law enforcement officers. As Attorney Cermele notes in his affidavit:

> My experience in litigating First Amendment speech and retaliation claims began in 1998 in *Milwaukee Police Association, et al. v. Jones, et al.*, 192 F.3d 742 (7th Cir. 1999). That case was resolved by means of dispositive motions in the Eastern District, and then reversed (in my client's favor) by means of the Seventh Circuit's decision dated September 24, 1999.
>
> In addition, myself and Attorney Pings have successfully litigated a First Amendment retaliation case in *Fuerst v. Clarke*, 454 F.3d 770 (7th Cir. 2006).
>
> Moreover, this firm has successfully represented these specific plaintiffs in *Zidek, et al. v. Clarke*, 588 F.3d 523 (7th Cir. 2009), involving a First Amendment violation stemming from the Establishment and Free Exercise Clause.

(Cermele Aff. ¶ 8, section C.)

As to the undesirability of the case, Attorney Cermele notes, and I find persuasive, the following:

> Given what was initially viewed as the relatively minor amount of monetary damages, plaintiffs were highly unlikely to obtain a different attorney to take their case, let alone a law firm that has such significant experience with law enforcement and constitutional litigation.

(Cermele Aff. ¶ 8, section H.)

Finally, Attorney Cermele sets forth in his affidavit other cases wherein attorney's fees for Attorney Pings and him were awarded at an hourly rate of $250.00. More specifically, Attorney Cermele states that he recovered an attorney's fee award of $250 per hour in the following cases: "*Boone, et al. v. Milwaukee County* (Eastern District of Wisconsin, Fair Labor Standards Act litigation); *Parish v. Clarke, et al.* (Eastern District of Wisconsin, First Amendment litigation); and *Fuerst v. Clarke* (Eastern District of Wisconsin and Seventh Circuit, First Amendment litigation)." He also avers that, in 2008, in the case of *Zidek, et al. v. Clarke et al.*, Case. No. 06-C-0602, the Hon. Lynn Adelman awarded attorney's fees to C&A in the amount of $250.00 per hour for work performed by Attorney Cermele, $200.00 per hour for work performed by Attorney Pings, and $175.00 per hour for work performed by Attorney Granitz.

In light of all the foregoing, I am persuaded that the lodestar amount for the work performed by C&A in this case should be adjusted upward for work performed by Attorneys Cermele and Pings. I will award attorney's fees for work performed by Attorney Cermele at the hourly rate of $250.00. I will award attorney's fees for work performed by Attorney Pings at the hourly rate of $200.00. However, I will not award attorney's fees for Attorney Granitz at the upwardly adjusted requested rate. I have no doubt that Mr. Granitz is a fine lawyer. But, he was not licensed to practice law in Wisconsin until May 24, 2006. The work he performed on this case was from June 2007 through September 2008. At that time, his experience level did not fall into a category similar to Attorney Cermele or Pings. Thus, I will award attorney's fees for the work performed by Attorney Granitz at the hourly rate which DSA agreed to pay him, to wit, $125.00.

One final matter, I note that on several occasions C&A did not charge DSA for work performed by certain attorneys. I will not award attorney's fees for any billable time not actually billed to DSA by C&A.

In sum, I will award attorney's fees to C&A in the following amounts: Attorney Cermele will be awarded $13,000 in attorney's fees for 52 hours of work at a billable rate of $250 per hour; Attorney Pings will be awarded $11,020 for 55.1 hours of work at a billable rate of $200 per hour; Attorney Granitz will be awarded $10,587.50 for 84.7 hours of work at a billable rate of $125 per hour. This comes to a total of $34,607.50 in attorney's fees.

Turning to V&D, I note that V&D has provided somewhat more detail in support of its fee request, at least in terms of justifying its higher hourly rate. To be sure, like C&A, it agreed to bill DSA at an hourly rate of $150.00 for shareholders and $125.00 for associates, and further agreed to submit fees in fee-shifting litigation at the prevailing market rate. (Plts.' Reply Br. at 2.) Also like C&A, V&D not only represents DSA (at least since December 2008), but "has previously represented scores of other law enforcement bargaining units and representatives since 1982." (Vanden Heuvel Aff. ¶ 5, section ix.)

All that having been said, V&D has presented a compelling case for finding that it regularly charges a higher hourly rate for other clients. V&D also has set forth the percentage of other work that the firm performs besides working for law enforcement associations and, in doing so, has demonstrated that Attorneys Vanden Heuvel and Wiemer likely gave up the opportunity to work on more lucrative matters in order to represent the plaintiffs in this case. Specifically, V&D represents as follows:

> Vanden Heuvel & Dineen, S.C. is providing legal services to the MDSA on terms that decrease its true billing rate. Attorney Linda S. Vanden Heuvel has a robust family law and personal injury practice, which account for approximately 70% of her practice. Attorney Vanden Heuvel typically charges family law clients between $225.00 to

8

> $400.00 per hour. Attorney Vanden Heuvel has also settled several million dollar personal injury cases, including $1.1 million and $5.9 million. Likewise, Attorney Graham P. Wiemer practices criminal and family law, which account for approximately 70% of his practice. Attorney Wiemer charges at least $195.00 per hour for criminal and family law matters. Both Attorney Vanden Heuvel and Wiemer reject family, criminal, and personal injury clients to work on MDSA matters. By working for $150.00/$125.00 per hour on the MDSA's civil rights litigation, [V&D] is losing out on family, criminal, and personal injury clients that pay at a higher rate.

(Plts.' Reply Br. at 3-4, citations to affidavit omitted.)

Given the foregoing, I am persuaded that the prevailing market rates for Attorneys Vanden Heuvel and Wiemer are $250.00 and $200.00, respectively. Thus, those hourly rates will be applied to their hours worked in the instant case in order to arrive at the lodestar amount. That lodestar amount with respect to their work on this case is, as previously stated, $10,617.16. The lodestar amount will not be adjusted. V&D shall be awarded $10,617.16 in attorney's fees pursuant to 42 U.S.C. § 1988.

Finally, the plaintiffs should file their bill of costs with the Clerk of Court. The Clerk of Court will determine what costs are properly taxable.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' motion for attorney's fees and costs be and hereby is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that attorney's fees be and hereby are awarded to Cermele & Associates, S.C. in the amount of $34,607.50;

**IT IS FURTHER ORDERED** that attorney's fees be and hereby are awarded to Vanden Heuvel & Dineen, S.C. in the amount of $10,617.16;

**IT IS FURTHER ORDERED** that, pursuant to the parties' agreement, plaintiff David Hutchins be and hereby is awarded the sum of $5,000.00 in compensatory damages;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

9

**SO ORDERED** this 14th day of June 2010 at Milwaukee, Wisconsin.

BY THE COURT:

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge